FORET, Judge.
This is a suit for damages due under an oil and gas lease. Plaintiff, Thomas B. Freeland, filed suit against defendant, Crab Run Gas Company, the assignee of an oil and gas lease, seeking to recover under the terms of the lease for damages to the *175 leased premises. Following the filing of exceptions of no cause and no right of action, plaintiff amended his petition to add as plaintiffs: Charles J. Freeland, III, Joseph Wynn Freeland, and Mary Alice Wynn Freeland. The court referred plaintiffs exceptions to the merits. After trial on the merits, the court rejected plaintiff’s ** exceptions and rendered judgment in favor of plaintiffs and against defendant • for $8,328.72, with legal interest from date of judicial demand. Defendant appealed. We reverse and remand.
FACTS
On November 25, 1975, the executors of the Succession of Charles J. Freeland, Jr. executed an oil and gas lease to Redsco, Inc. on several tracts of land located in Acadia Parish. This lease was assigned to Crab Run Gas Company, the defendant in this case. In 1976, a well was drilled on one of the leased tracts and then plugged and abandoned.
Apparently, sometime after the execution of the lease, the Succession of Charles J. Freeland, Jr. was probated, and his widow, Mary Alice Wynn Freeland, and his heirs, Thomas B. Freeland, Charles J. Freeland, III, and Joseph Wynn Freeland, were sent into possession of the tract where the well site was located. The petition of Thomas B. Freeland alleges that following a partition, he became the sole owner of the tract, although, apparently Joseph Wynn Freeland retained a servitude covering half of the minerals of this tract. However, the record is devoid of any succession proceedings, judgment of possession or otherwise, recognizing the plaintiffs as the widow and heirs of the decedent, Charles J. Freeland, Jr. Likewise, there is no evidence of an act of partition or a partition agreement showing Thomas B. Freeland to be the sole owner of the tract involved. As a consequence of these inadequacies or omissions in the record, we are constrained to hold that the plaintiff has not shown a right of action. A cause of action they have stated in their pleadings, but without a concomittant showing of a right of action in the plaintiff, the trial court erred in overruling the exception of no right of action. However, cases may be remanded for introduction of additional evidence when, by such action, the interest of justice will be served. LSA-C.C.P. art. 2164; Magnolia Petroleum Company v. Boudreaux, 233 La. 409, 96 So.2d 650 (1957). At oral argument, able counsel for Crab Run admitted that some damage was caused by Crab Run’s operations; that it owes money to somebody; and that it stands ready to pay the damages, but the question is to whom. The exigencies of the case require that we remand for introduction of testimony and/or documentary evidence to show the identity of the heirs of Charles J. Freeland, his spouse in community, and the origin of their interests in the lease and the tract of land which was subject to the lease. Only then will the issues involving the damages caused to the property be in a posture for proper disposition of the claims of plaintiff.
QUANTUM
Because of our foregoing disposition of the case, it may appear unusual for us to discuss the issue of quantum. However, inasmuch as Crab Run has admitted that it owes some money to somebody, and in the interest of judicial economy, and because our discussion of the issue of quantum may resolve this matter at the trial court level, and further, because we have thoroughly reviewed the record in relation to quantum, we are inspired to make known our views on the amount of damages sustained by the parties who are entitled to recover these damages.
Under the terms of the oil and gas lease under which Crab Run operated, the lessee was responsible for any surface damages. Following the abandonment of the well, Crab Run or someone hired by it did some work toward restoring the well site to its original condition, but more was required which plaintiff claims was not done.
*176 There was testimony at trial that the well site had not been adequately cleaned up and that there were small pits, board-runs, cables, and debris on the well site. Thomas B. Freeland informed Crab Run that the site had not been adequately cleaned and, in fact, filed suit against Crab Run in 1977. Sometime afterward, a work crew cleaned up the well site, filled in the pits and spread dirt across approximately 6 acres. Nevertheless, the well site was not in its original condition. The surface soil of the well site and the area around it, approximately 6 acres in all, contained a high percentage of clay and there were sink holes where the pits had been filled in. Crab Run performed additional work on the site after 1977, but plaintiff was still not satisfied with the condition of the site. Because of the condition of the 6-acre area, nothing was planted on it from 1978 through 1981. In 1982 and 1983, the entire 56-acre site was used for pasture. In 1984, soybeans were planted on the entire 56-acre tract, including the well site. At trial, plaintiff claimed that the condition of the 6-acre tract was adversely affecting the growth of the soybeans planted on it.
At trial, plaintiffs expert, Jerry Fonte-not, testified that it would cost $6,585 to restore the property to its original condition as productive farmland. In making its award, the court accepted this figure. In so doing, it abused its discretion. Mr. Fon-tenot’s estimate of the cost of restoring the property was totally unsubstantiated and, in fact, was at odds with the other testimony, in particular, that of the tenant, Mr. Hetzel, who testified in detail, on behalf of plaintiff, concerning the cost of the work which Mr. Fontenot claimed was necessary to recondition the site.
Mr. Hetzel testified that prior to the time of trial he had water leveled and dry leveled the tract. These leveling operations had involved 20 acres because it was necessary to pull dirt from other areas in an effort to fill in low ground in the 6-acre tract. According to Mr. Hetzel, the cost of dry leveling 20 acres was $315 ($70 per hour x 4V2 hours) and the cost of water leveling was $175 ($70 per hour X 2½ hours), plus $200 which represented the cost of flooding the land, or a total of $375.00. Therefore, the cost of restoration work done at the time of trial was $690.
Mr. Fontenot testified that it would take another three years to restore this site. Apparently this restoration work would involve water and land leveling the land each year, plus some additional plowing. Given the cost of these operations as testified to by Mr. Hetzel, the cost of restoring the site would amount to:
Dry leveling $315 per year for 3 years = $ 945
Water leveling $375 per year for 3 years = $1125
$2070
Defendant’s expert, David E. Black, testified that additional fertilizer would be necessary over these three years at a per-acre cost of $15 the first year and $7.50 the following two years, or a combined cost of $600. The total cost of restoration then comes to:
Work already done $ 690
Leveling over 3 years $2070
Fertilizer over 3 years $ 600
$3360
The trial court also awarded plaintiff $1,743.72 for crop losses. This amount was not seriously contested by Crab Run and, having examined the record, we think that the trial court’s award in this respect was reasonable.
DECREE
For the foregoing reasons, the judgment of the trial court is reversed and set aside, and the matter is remanded for further proceedings in accordance with our views expressed.
Costs at the trial level and of this appeal shall await final disposition of this matter.
REVERSED AND REMANDED.

 For the sake of convenience, plaintiffs will be referred to as "plaintiff.”